**APT PITTSBURGH LIMITED PARTNERSHIP Plaintiff,**

v.

**LOWER YODER TOWNSHIP, CAMBRIA COUNTY, a political subdivision of the Commonwealth of Pennsylvania, and Zoning Hearing Board of Lower Yoder Township, Defendants.**

No. CIV. A. 98–187J.

United States District Court, W.D. Pennsylvania.

July 26, 2000.

Clifford B. Levine, Alice B. Mitinger,
Thorp, Reed & Armstrong, Pittsburgh,

·PA, for APT Pittsburgh Limited Partnership, plaintiffs.

, Scott G. Dunlop, Christopher J. Hess, Marshall, Dennehey, Warner, Coleman & Goggin, Pittsburgh, PA, for Lower Yoder Township, Cambria County, a political subdivision of the Commonwealth of Pennsylvania, Zoning Hearing Board of Lower Yoder Township, defendants.

## MEMORANDUM OPINION AND ORDER

D. BROOKS SMITH, District Judge.

In this action, plaintiff APT Pittsburgh Limited Partnership ("APT") has sued Lower Yoder Township and its Zoning Hearing Board ("ZHB" or "Board") over the Board's refusal to issue a building permit for APT to erect a cellular communications tower. Plaintiff claims that the Board's action violated the federal Telecommunications Act ("TCA"), Pennsylvania law, and a host of federal constitutional provisions. In accordance with the procedure adopted by numerous other federal courts, I decided to review the ZHB's decision based solely on the record developed before the Board. I also requested that the parties submit proposed findings of fact and conclusions of law based solely on that record made before the Board. Today, I treat those submissions as cross-motions for summary judgment. I conclude that Lower Yoder's ordinance is valid under the TCA, Pennsylvania law, and the federal constitution, and that the defendants refusal to issue a building permit to APT was entirely lawful.

## I

The essential facts in this matter are not in dispute. Pursuant to the Telecommunications Act of 1996 ("TCA"), the Federal Communications Commission ("FCC") awarded APT a Personal Communication Services ("PCS") license for the Pittsburgh

Major Trade Area ("MTA"), an area which includes western Pennsylvania, the West Virginia panhandle, and southeastern Ohio. (Tr. at 16; R.R. No. 3(d), Attach. B).[1] One of the conditions of APT's license is that it provide "seamless coverage" for all the areas within the MTA. (R.R. No. 3(d), Attach. B). Lower Yoder Township is one of the areas within the MTA.

In March of 1998, APT believed that it needed to fill a gap in its coverage in Lower Yoder Township and on a portion of State Routes 56 and 271. (Tr. at 25–28; R.R. Nos. 17–18). Consequently, APT arranged to lease a parcel of land owned by the Johnstown Water Authority located in the "CS" or conservation district of Lower Yoder. (R.R. Nos.3(d), Attachs. A & B). APT then applied for a building permit to construct a 164-foot tower on that property. (Tr. at 20; R.R. No. 3(d), Attachs. B & D). A municipal water tank was already located on the property in question. (Tr. at 21; R.R. No. 3(d), Attachs. B & D). APT's application was denied by the local Zoning Officer approximately one month later on the grounds that: a communications tower was not a permitted use in the district, the tower height was greater than the thirty-five (35) foot limitation under the zoning ordinance, and the proposed perimeter fence exceeded the local six (6) foot maximum. (R.R. No. 2, Apr. 22, 1998 Letter from W. Patrick to K. McCombs). In May 1998, APT filed a variance request before the ZHB, also raising a validity challenge to the zoning ordinance and an argument that the denial violated the TCA. (R.R. No. 3(d)).

APT's challenge put at issue a number of provisions of Lower Yoder's zoning ordinance, known as Ordinance No. 77. (R.R. No. 20). The first provision is Article 8, which governs "CS" or conservation districts. *Id.* art. 8. Under this provision, there are only two permitted uses in a CS district, agriculture and open spaces. *Id.*

---

1. References to items in the reproduced record, dkt. no. 18, will be cited by their number in the table of contents as "R.R. No. ___." The transcript of the June 30, 1998 hearing before the ZHB, which is found at R.R. No. 1, will be cited as "Tr. at ___."

§ 801A. In addition, the maximum height of buildings erected in the CS districts is thirty-five (35) feet. *Id.* § 802C. It is under Article 8 that APT sought, and was denied, its building permit in March of 1998. (R.R. No. 2, Apr. 22, 1998 Letter from W. Patrick to K. McCombs).

A second provision of Ordinance No. 77 is also relevant to APT's challenge, Article 7 governing the "L" or light industrial district. (R.R.No. 20, art 7). Article 7 enumerates twenty-eight (28) permitted uses, including "[b]roadcasting, radio and television station[s] and any necessary and related facilities." *Id.* § 701(A)(26). Just in case the enumerated uses do not cover every conceivable industrial or commercial use the Ordinance contains a catchall provision, permitting "[a]ny other compatible type manufacturing/light industrial or commercial use not specifically listed herein when authorized by the Zoning Hearing Board according to the procedure outlined in Section 1002.A.(5)." *Id.* § 701(A)(22).[2] APT did not request permission to build its communications tower in Lower Yoder's L district.

On June 30, 1998, APT presented its case at a hearing before the ZHB. (R.R. No. 1). At this hearing, APT presented the testimony of its zoning manager, Keith McCombs, and its radio frequency engineer, Patrick Tuttle. (Tr. at 19–30). Mr. McCombs described the proposed site, the proposed tower, and the services that APT provides under its FCC license. *Id.* at 19–22. Mr. Tuttle explained the technology at issue, why a tower of the proposed height was needed at that location, and that the tower met all federal regulations. *Id.* at 22–30. According to Mr. Tuttle, APT had a current gap in service that it wanted to close by building the new tower at the proposed location. *Id.* at 26–28. APT also presented evidence that the Lower Yoder zoning ordinance did not explicitly provide

for communications towers. *Id.* at 122.[3] Finally, APT demonstrated that other communications facilities had been built in the CS districts in that municipality. *Id.* at 30–31, 126–127. Concerning these other facilities, some of which are owned by APT, members of the ZHB noted that some of them were put in before the existing zoning ordinance went into effect, some were permitted by special exception, and others went in under a variance. *Id.* at 126–28.

APT did not provide any evidence at the hearing, however, about other wireless providers. Although APT claimed that it had a gap in its service in portions of Lower Yoder and along Routes 56 and 271, *id.* at 26–28, it produced no evidence about whether other service providers were currently servicing this gap. Indeed, APT produced no evidence about how other service providers were servicing Lower Yoder Township at all. Further, although APT claimed that other wireless providers had been permitted to place towers in the CS district, *id.* at 30–31, 126–127, it produced no evidence about whether these providers were, in fact, similarly situated to APT.

APT also failed to produce any evidence at the hearing on another crucial point: whether it, or any other provider, could build a functional communications tower outside of the CS district. APT's engineer, Mr. Tuttle, testified that the topography was the "deciding factor pretty much usually where a lot of sites are placed." *Id.* at 29. Tuttle testified that the proposed site in the CS district was "appropriate" for APT's communications tower based on the topography and physical characteristics of the proposed site. *Id.* Nonetheless, he did not mention whether any other sites in Lower Yoder would be "appropriate" for APT's proposed site. Indeed, there was no testimony at the hearing about whether APT even attempt-

---

**2.** Section 1002.A.(5) empowers the ZHB to hear and decide use requests under § 701(A)(22).

**3.** The terms "communications tower" or "communications facility" refer to those facilities used by the providers of wireless services.

ed to locate other sites for its proposed tower. Also missing from the hearing was any evidence about whether other sites in Lower Yoder may have been appropriate for service providers other than APT to build a functional communications tower.

At the conclusion of the hearing, the Board, by oral decision, unanimously denied APT's application. *Id.* at 149–150. On August 7, 1998 the Board issued a written decision with findings of fact and conclusions of law explaining its denial. (R.R. No. 19). In this written decision, the ZHB rejected APT's validity challenge to the zoning ordinance because antenna towers could be located in the "L" or light industrial district; thus, such towers were not impermissibly excluded from the entire municipality. *Id.* at IVA. The Board also ruled against APT on its variance request, holding that APT had adduced no evidence concerning any unique characteristics of the Water Authority parcel that justified hardship relief, and no evidence that the use would not alter the essential characteristics of the neighborhood or impair the use of adjacent property. *Id.* at IVC. The Board additionally dismissed APT's challenge under the TCA, opining that, because communications towers are permitted in the L district, the ordinance does not amount to a blanket exclusion or prohibition of wireless services. *Id.* at IVB. It further noted that, although other carriers' towers were permitted in other CS districts within the Township, those facilities either predated the enactment of the ordinance or were constructed pursuant to properly supported variance applications. *Id.*

Approximately a week before the ZHB issued its written denial, APT filed a complaint in this court alleging that Lower Yoder Township and its ZHB (collectively "defendants") violated the federal TCA,

Pennsylvania law, and a host of federal constitutional provisions. Dkt. no. 1. In April 1999, I dismissed a number of APT's claims, but left the meat of its allegations intact. Dkt. no. 11. In late June 1999, at the request of APT and in accordance with the procedure adopted by numerous other federal courts, I decided to review the ZHB's decision based solely on the record developed before the Board. Dkt. no. 17. Consequently, I asked the defendants to submit a certified copy of the record developed at the June 30th hearing to the Clerk of Court. *Id.* And I ordered that each party submit to this court proposed findings of fact and conclusions of law. *Id.*

## II

Procedurally, I will treat the submissions of the parties as cross-motions for summary judgment under Federal Rule of Civil Procedure 56.[4] Summary judgment is appropriate where admissible evidence fails to demonstrate a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "The burden on the moving party may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted). "[S]ince a complete failure of proof concerning an essential element," *id.* at 323–24, 106 S.Ct. 2548, on which a party bears the burden of proof at trial establishes that the moving party is "entitled to a judgment as a matter of law," the nonmoving party must establish the existence of every element essential to its case. *Id.; Omnipoint Communications Enters., L.P. v. Newtown Township,* Nos. 99–1453, 99–1455 and 99–1458, slip. op. at 5 (3d Cir. July 13, 2000). Such evidence must be significantly probative

---

4. This procedure is consistent with that followed by most other federal district courts in reviewing the decisions of local zoning authorities under the TCA. *See, e.g, APT Pittsburgh L.P. v. Penn Township,* 196 F.3d 469, 473 (3d Cir.1999) (noting that the district court had treated the parties' submissions as cross-motions for summary judgment); *see also APT Minneapolis, Inc. v. Eau Claire County,* 80 F.Supp.2d 1014 (W.D.Wis.1999) (treating the parties' submissions as cross-motions for summary judgment).

and more than "merely colorable." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994).

Once the moving party has satisfied its burden, the nonmoving party is required by Fed.R.Civ.P. 56(e) to establish that there remains a genuine issue of material fact. *Clark v. Clabaugh*, 20 F.3d 1290, 1294 (3d Cir.1994). The nonmovant "may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," *id.* at 248, 106 S.Ct. 2505, and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 257, 106 S.Ct. 2505.

■ In determining whether a nonmovant has established the existence of a genuine issue of material fact, the evidence of the nonmovant must "be believed and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. Whether an inference is justifiable, however, depends on the evidence adduced. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 595–96, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir.1990). Likewise, "simply show[ing] that there is some metaphysical doubt as to the material facts" does not establish a genuine issue for trial. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

■ Nor will the submission of an affidavit always create a genuine issue of material fact. Rule 56(e) requires that the affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Fed.R.Civ.P. 56(e). Accordingly, "[a]n affidavit that is essentially conclusory and lacking in specific facts is inadequate ...." *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir.1985) (internal quotation marks omitted) (quoting *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781, 789–90 (3d Cir.1978)). Similarly, statements made only on belief or on information and belief may not be considered. 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2738, at 350–56 (1998).

Applying this standard to the undisputed facts of this case, I conclude that summary judgment should be entered for the defendants, Lower Yoder Township and the ZHB, on all counts raised by AT.

### III

■ I will first address plaintiff's claims under the TCA. Enacted in 1996, the TCA was an effort to balance two competing goals: 1) the goal of facilitating growth in the personal communications services industry through the expansion of communications towers, H.R. Conf. Rep. No. 104–204, at 94 (1995), *reprinted in* 1996 U.S.C.C.A.N. 10, 61; with 2) the goal of preserving the authority of state and local governments to regulate land use and zoning. *Id.* at 94–95, *reprinted in* 1996 U.S.C.C.A.N. at 61; *see also Town of Amherst, N.H. v. Omnipoint Communications Enters., Inc.*, 173 F.3d 9, 13 (1st Cir.1999) (stating that the TCA was "a deliberate compromise between two competing aims—to facilitate nationally the growth of wireless telephone services and to maintain substantial local control over siting of towers."). The version of the bill passed by the House of Representatives would have stripped local governments of their authority over zoning matters altogether by requiring the FCC to regulate the siting of wireless telephone transmitters. *See Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Township*, 181 F.3d 403, 407 (3d Cir.1999). The Conference Committee instead decided to pre-

serve this authority by enacting 47 U.S.C. § 332(c)(7) which "preserve[s] the authority of State and local governments over zoning and land use matters except in... limited circumstances." H.R. Conf.Rep. No. 104–458, at 207–208, *reprinted in* 1996 U.S.C.C.A.N. at 222; *see also* 47 U.S.C. § 332(c)(7)(A) (stating that "nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.").

The scope of these limited circumstances is at issue in this case. Section 332(c)(7)(B) of the TCA imposes a number of limitations on State and local zoning authority. First, State and local authorities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). Second, State and local authorities "shall not unreasonably discriminate among providers of functionally equivalent services." *Id.* § 332(c)(7)(B)(i)(I). Finally, any decision by State or local authorities "to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." *Id.* § 332(c)(7)(B)(iii).

### A

■ Plaintiff first argues that Lower Yoder's zoning ordinance prohibits or has the effect of prohibiting the provision of personal wireless services in violation of § 332(c)(7)(B)(i)(II) of the TCA. A wireless provider, like APT, can prove a violation of this provision in two ways: it can show that the municipality actually "prohibits" the provision of wireless services; or it can show that the municipality's conduct has the "effect" of prohibiting such services. APT attempts to offer both forms of proof.

First, APT claims that Ordinance No. 77 is a flat out prohibition of wireless ser-

vices. To make out such a claim, APT must show that Lower Yoder has an express ban or moratorium on the construction of wireless facilities, that there is a consistent pattern of denials by Lower Yoder, or even that Lower Yoder has expressed hostility to personal wireless service facilities. *Cf. APT Pittsburgh L.P. v. Penn Township,* 196 F.3d 469, 479 (3d Cir.1999). In this case, APT seeks to prove that Lower Yoder has an outright ban on communications towers. APT points to the ordinance itself, (R.R. No. 20), the testimony of William Patrick, the Zoning Officer for Lower Yoder Township, (Tr. at 122), and the testimony of Keith McCombs, APT's zoning manager, *id.* at 30. Based on this evidence, APT argues that Ordinance No. 77 does not expressly permit communications towers, *a fortiori,* such towers are expressly banned in violation of § 332(c)(7)(B)(i)(II).

I disagree. Simply because an ordinance does not expressly permit a use does not mean that it prohibits that use. If localities were required to detail in their zoning ordinances every possible land use, they would have time to do little else. It is difficult enough for experts in the telecommunications industry to keep up with the changes in the industry, where technology has changed so rapidly in a few short years. Requiring local zoning officers to do the same—and to assure that these changes are enshrined in local ordinances—is asking for more than the TCA requires.

Nonetheless, Ordinance No. 77 does provide for the construction of communications towers in a way that certainly satisfies the provisions of the TCA. For example, Article 7 enumerates twenty-eight (28) permitted uses in Lower Yoder's L or light industrial district, including "[b]roadcasting, radio and television station[s] and any necessary and related facilities." (R.R. No. 20, § 701(A)(26)).[5] In addition,

5. APT argues that "broadcasting, radio and television station[s]" are different from com-

munications towers and, therefore, do not fall within this provision. Dkt. no. 19, at 10–

Article 7 contains a catchall provision, permitting "[a]ny other compatible type manufacturing/light industrial or commercial use not specifically listed herein when authorized by the Zoning Hearing Board according to the procedure outlined in Section 1002.A.(5)." *Id.* § 701(A)(22). Even if a telecommunications tower is not expressly listed in Article 7, it falls well within the catchall provision.[6]

■  Failing to prove that Ordinance No. 77 flatly "prohibits" the provision of communications facilities, APT next argues that the denial of its request nonetheless had the "effect" of prohibiting such facilities. For APT to win on this claim, it must prove two things:

First, the provider must show that its facility will fill an existing significant gap in the ability of remote users to access the national telephone network. In this context, the relevant gap, if any, is a gap in the service available to remote users. Not all gaps in a particular provider's service will involve a gap in the service available to remote users. The provider's showing on this issue will thus have to include evidence that the area the new facility will serve is not already served by another provider.

Second, the provider applicant must also show that the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve. This will require a showing that a good faith effort has been made to identify and evaluate less intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures.

*Penn Township,* 196 F.3d at 480; *Newtown Township,* slip. op. at 7. APT has failed to carry its burden on either prong of this two-part test.

APT has failed to present evidence demonstrating a "significant gap in the ability of remote users to access the national telephone network." *Penn Township,* 196 F.3d at 480. At the hearing, APT explained that it had a gap in its service along portions of Routes 56 and 271. (Tr. at 25–28; R.R. Nos. 17–18). I have no doubt that APT does suffer from such a gap. But to prove a violation of the TCA, a provider must establish more than just a gap in its own service. It must produce "evidence that the area the new facility will serve is not already served by another provider." *Penn Township,* 196 F.3d at 480; *Newtown Township,* slip. op. at 8 ("the question then remains as to whether other providers already serve the area at issue in this case."). At the June 30th hearing, APT produced no such evidence. If anything, the evidence adduced at the hearing suggested just the opposite. APT officials, members of the public, and even members of the ZHB testified that there were already wireless towers in Lower Yoder's CS districts. (Tr. at 30–31, 126–128). The only inference to be drawn from

---

11. APT's argument rests on technical differences and says nothing about aesthetics, the primary concern of zoning ordinances. Aesthetically, communications towers are quite similar to television, radio and broadcasting towers.

6. APT seeks to exclude any evidence about Article 7 on the ground that there was no testimony regarding this provision offered at the June 30th hearing. I reject this argument. First, the language of the ordinance was the very issue discussed at the hearing before the ZHB. Second, the defendants stated their position about Article 7 in their written denial of APT's application. (R.R. No.

19). I can hardly imagine how this written statement could not be considered by a court reviewing a zoning board decision when just such a statement is required by the TCA. *See* 47 U.S.C. § 332(c)(7)(B)(iii). Finally, even if this information is not properly part of the "record" below, as APT argues, I am not tied to the "record" in determining whether there was a violation of § 332(c)(7)(B)(i)(II) of the TCA. *Penn Township,* 196 F.3d at 475 (a court's review of an alleged violation of § 332(c)(7)(B)(i)(II) is "not necessarily limited to the record compiled by the state or local authority.").

this evidence is that there was already wireless service in Lower Yoder.

Furthermore, even if there is a significant gap in this case, APT has failed to present any evidence that its proposed tower will be the "least intrusive" way to fill this gap. *Penn Township*, 196 F.3d at 480. APT's engineer, Mr. Tuttle, testified that the proposed site in the CS district was "appropriate" for APT's communications tower. (Tr. at 29). Once again, to establish a violation of the TCA, APT must come forward with more. In particular, APT must demonstrate that a "good faith effort has been made to identify and evaluate less intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures." *Penn Township*, 196 F.3d at 480. In this case, APT may have done precisely what is mandated by the Act, but there is nothing in the record to demonstrate these efforts. None of APT's witnesses during the June 30th hearing mentioned whether APT considered other sites or alternate designs. Without such proof, APT cannot establish a violation of the TCA.

This case is remarkably similar to an earlier case brought by APT against another Pennsylvania municipality, Penn Township. In that case, APT was denied a variance to build a communications tower in Penn Township. Believing that it had a gap in service along Route 8, APT located a site in the Township's "RE" (residential) district where it wanted to place its facility. Soon after APT made these arrangements, however, the Township changed its zoning ordinance to permit such uses only in its "M"(light industrial) districts. To comply with this new ordinance, APT conducted a three month investigation to find a suitable tower site in one of the M districts. Eventually, APT concluded that the land for such an alternate site was either not technologically feasible or unavailable. Consequently, APT forged ahead with its plans to build in the RE

district and sought a variance from the Township's zoning hearing board. After the zoning board denied its request, APT appealed to the district court claiming that the Township's denial violated the TCA because it had the effect of prohibiting the provision of wireless services. The district court denied APT's claim under the TCA.

On appeal, the Third Circuit rejected APT's claim that Penn Township's denial violated the TCA. In particular, the court held that APT had failed to prove both prongs of the two-part test noted above. First, APT had tendered no evidence which would support a conclusion that there was a significant gap in coverage for remote users. As the court stated, "APT's evidence ... tells us nothing about whether other providers were already servicing the Route 8 corridor and, if so, how that service was being provided." *Penn Township*, 196 F.3d at 481. Second, even if there was a gap, APT did not produce sufficient evidence that its proposal was the least restrictive means of closing that gap. "While the record shows that APT considered other sites and the feasibility of a tower of lesser height on the Smith site, it would not support an inference that APT's proposal was the least restrictive means of [closing] a significant gap in service." *Id.*

Despite the obvious similarities between *Penn Township* and the instant case, it is the differences between these cases that reveals just how deficient APT's case against Lower Yoder is. In *Penn Township*, APT took great pains to locate its communications tower in one of the Township's M districts. In fact, it conducted a three-month long investigation to find an appropriate site to fill its service gap along Route 8. In addition, APT also toyed with the idea of building a shorter tower on its proposed site, but ultimately decided to stick with its original plan. In the instant case, APT produced no such evidence. If alternate sites were viewed by APT officials or if lower tower heights were considered, this record reveals no such efforts.

If APT's considerable effort in *Penn Township* was insufficient to establish a violation of the TCA, *id.*, its effort in this case surely falls short of the mark.

In a bid to fill in the factual gaps in its case, APT has submitted the affidavit of Patrick Tuttle. Dkt. no. 22. Submitted eighteen (18) months after the June 30, 1998 hearing, and nearly six (6) months after APT submitted its proposed findings of fact and conclusions of law, this affidavit provides some information that was not presented during the June 30th hearing. First, Mr. Tuttle states that the light industrial district in Lower Yoder is "located in a remote area of the Township ... and is separated by two ridges from the areas for which coverage is required, including the two major roadways, Routes 56 and 271." *Id.* ¶ 15. Second, Mr. Tuttle states that "the L District is not a suitable area for a functional communications tower for APT." *Id.* ¶ 16. Finally, Mr. Tuttle extends his rationale to other wireless providers as well, stating that the L district is "also unlikely to be suitable for any wireless service provider which seeks to provide coverage on the major roadways in the area." *Id.* ¶ 16; *see also id.* ¶ 20 ("[g]iven the general technical requirements for other wireless systems, a communications tower in the L District would not provide coverage on Routes 56 and 271 for other wireless systems.").[7]

Defendants have moved to strike this affidavit, and there is merit to their argument. Repeatedly throughout the course of this litigation, APT has insisted that the review of this matter be limited to the evidence presented at the June 30, 1998 hearing. In January of 1999, for instance, APT asked this court "to review the ZHB's decision ... based on the record developed before the ZHB." Dkt. no. 9, at 2. It insisted that "the review of zoning issues under the Act should be conducted ...

without taking additional evidence." *Id.* at 3. It even went so far as to argue against the taking of any additional evidence in this matter. "In this case," APT stated, "*a full record with respect to APT's application was developed before the ZHB.* The ZHB heard the testimony of all those who sought to be heard and did not exclude any testimony. Thus, the Court should not consider additional evidence." *Id.* at 6 (emphasis added). Based on APT's arguments, and the overwhelming case authority in this area, I ordered that I would resolve this case based solely on the record developed before the ZHB. Dkt. no. 17.

■ Since my decision to consider only the record in front of the ZHB, the Third Circuit has handed down *Penn Township* in which it declared that a district court's review of a § 332(c)(7)(B)(i)(II) claim is "not necessarily limited to the record compiled by the state or local authority." *Penn Township*, 196 F.3d at 475. I consider the statement to be *dicta* because the Third Circuit then went on to review only the record compiled before the Penn Township zoning board in reaching its decision. Nonetheless, it is *dicta* that finds support in other cases. *See Town of Amherst*, 173 F.3d at 16 n. 7; *AT & T Wireless PCS v. City Council of Virginia Beach*, 155 F.3d 423, 426–28 (4th Cir.1998)(Luttig, J.). I will exercise my discretion and consider Mr. Tuttle's affidavit to the extent that it contains admissible evidence.

Even when the facts adduced in Tuttle's affidavit are added to the mix, APT still cannot show that the defendants violated the TCA. First, APT has not tendered any evidence to demonstrate that there is a "significant gap in the ability of remote users to access the national telephone network." *Penn Township*, 196 F.3d at 480. Nowhere in this affidavit does Mr. Tuttle mention "whether the other providers

---

7. A detailed analysis of APT's claim concerning whether other providers can build functional towers in the L district is discussed in Section IVA, *infra*. This analysis applies equally to any claim APT might have that Ordinance No. 77 violates § 332(c)(7)(B)(i)(II) because no providers can build a functional tower in the area allotted by the Township.

were already servicing [Routes 56 and 271] and, if so, how that service was being provided." *Id.* at 481. Second, Mr. Tuttle's claim that "the L District is not a suitable area for a functional communications tower for APT," dkt. no. 22, ¶ 16, does not alone prove that its proposal was the least intrusive way to fill its service gap. This claim is really no different than the claim that the Third Circuit rejected in *Penn Township.* In that case, APT stated that a communications tower in the Penn Township light industrial districts was not "technologically feasible." *Penn Township,* 196 F.3d at 472. The words differ, but the point is the same. Just as in *Penn Township,* the evidence does "not support an inference that APT's proposal was the least restrictive means of [closing] a significant gap in service." *Id.* at 481.

Because APT has failed to adduce any evidence to prove that Lower Yoder's zoning ordinance prohibits or has the effect of prohibiting the provision of personal wireless services, *see* 47 U.S.C. § 332(c)(7)(B)(i)(II), I will grant judgment in favor of the defendants on this claim.

**B**

■ Plaintiff's second claim is that the defendants "unreasonably discriminate[d] among providers of functionally equivalent services," 47 U.S.C. § 332(c)(7)(B)(i)(I), when they denied APT's request for a building permit. In particular, APT claims that other wireless providers have been permitted to locate towers in Lower Yoder's CS districts, while APT has been limited only to the L district. Dkt. no.19, at 17. Section § 332(c)(7)(B)(i)(I) of the TCA contemplates proof on two elements. First, APT must show that it was somehow discriminated against by the defendants when its application for a building permit was denied. Second, it must prove that this discrimination was "unreasonable." "[T]he Act explicitly contemplates that some discrimination among providers of functionally equivalent services is allowed. Any discrimination need only be

reasonable." *AT & T Wireless,* 155 F.3d at 427; *see also Sprint Spectrum L.P. v. Willoth,* 176 F.3d 630, 638 (2d Cir.1999).

To satisfy the first prong of this two-part test, APT must prove that providers of "functionally equivalent services" were treated differently than it was. There is no such evidence in this record. First, it appears from the record that APT has been permitted to build in the CS district in the past. During the June 30th hearing, APT's zoning officer, Keith McCombs, testified that APT currently has communications towers located in Lower Yoder's CS districts. (Tr. at 126). Consequently, APT's claim that others were allowed to build towers in the CS districts, while it was not, is simply not supported by the record in this case. At a minimum, a discrimination claim requires that APT come forward with some evidence that it was treated differently than others. Such evidence is clearly lacking in this case. Second, even if APT had been barred from building in the CS district, there is no evidence that "functionally equivalent providers" were permitted to build in this district. The record contains only brief testimony about the existence of other communications towers in Lower Yoder. (Tr. at 30–31; 126–127; R.R. No. 19, ¶ 11). Nowhere is there any evidence that the other towers were put up by functionally equivalent providers.

Even if there was discrimination in this case, APT has produced no evidence proving that such discrimination was "unreasonable." 47 U.S.C. § 332(c)(7)(B)(i)(I). To secure relief under § 332(c)(7)(B)(i)(I), APT must make a showing that "the 'structure, placement or cumulative impact' of the existing facilities make them more intrusive than the proposed facility." *Penn Township,* 196 F.3d at 480 n. 7 (*quoting Willoth,* 176 F.3d at 643) ("it is not unreasonably discriminatory to deny a subsequent application for a cell site that is substantially more intrusive than existing cell sites by virtue of its structure, placement or cumulative impact."). "[T]he

phrase 'unreasonably discriminate among providers of functionally equivalent services' [provides] localities with the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services." H.R. Conf. No. 104–458, at 208, *reprinted in* 1996 U.S.C.C.A.N. at 222. APT has produced no evidence comparing the "structure, placement, or cumulative impact" of the existing facilities to the one that it proposed. Neither has it produced any evidence comparing the "visual, aesthetic or safety" aspects of the existing facilities with the one that it proposed. Absent such evidence, I cannot find that the defendants "unreasonably" discriminated against APT.

Indeed, if there was any discrimination between APT and other providers, it was wholly reasonable. It is reasonable for a municipality, like Lower Yoder, to reject an application to build a communications tower in a district where it already has a number of other towers. *See Willoth,* 176 F.3d at 643. As the record in this case indicates, there are already a number of communications towers in Lower Yoder's CS districts, some of which are owned by APT. It is simply not unreasonable for a municipality to decide, based on aesthetics or "cumulative impact," *id.,* that it will not permit more towers in its CS districts. That is precisely what the defendants appear to have done in this case. *See id.* at 639 ("local governments may reasonably take the location of the telecommunications tower into consideration when deciding whether ... to approve an application for construction of wireless telecommunications facilities, even though this may result in discrimination between providers of functionally equivalent services.").

Because APT has failed to adduce any evidence to prove that the defendants "unreasonably discriminate[d] among providers of functionally equivalent services," 47 U.S.C. § 332(c)(7)(B)(i)(I), I will grant judgment in favor of the defendants on this claim.

## C

APT's final claim under the TCA is that the defendants' denial of APT's application to build a communications tower was not supported by "substantial evidence" as required by 47 U.S.C. § 332(c)(7)(B)(iii). The TCA requires that any decision denying "a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). As the Third Circuit has noted, substantial evidence "does not mean a large or considerable amount of evidence, but rather such evidence as a reasonable mind might accept as adequate to support a conclusion." *Cellular Telephone v. Ho–Ho–Kus,* 197 F.3d 64, 71 (3d Cir.1999) (citations omitted); *Zoning Hearing Board of Pine Grove,* 181 F.3d at 408. Substantial evidence is more than a mere scintilla but less than a preponderance. *Omnipoint Communications v. City of Scranton,* 36 F.Supp.2d 222, 228 (M.D.Pa.1999) (citations omitted). More than anything else, the substantial evidence standard means that a reviewing court grants a degree of deference to the decisions of local zoning boards. A reviewing court has "no power either to weigh the evidence contained in the record or to substitute its own conclusions for those of the fact-finder." *Id.; 360 Degree Communications Co. v. Albemarle County,* 211 F.3d 79, 85 (4th Cir.2000) (when faced with conflicting positions that are both reasonable, courts should defer to the decision of the local zoning board).

The substantial evidence standard stated in § 332(c)(7)(B)(iii) only applies to certain kinds of decisions. For instance, the standard is meant to provide procedural protections to "determinations of factual issues made by state or local authority in the course of applying state or local law." *Penn Township,* 196 F.3d at 474. It is

not, however, applicable "to the issue of whether a state's denial of an application to construct a personal wireless service facility 'has the effect of prohibiting the provision of personal wireless services.'" *Id.* at 475 (*quoting* § 332(c)(7)(B)(ii)(II)). It does not apply to the question of whether the municipality "unreasonably discriminate[d] among providers of functionally equivalent services." *Cf. id.; Ho–Ho–Kus,* 197 F.3d at 71. And it does not apply to challenges to the validity of a zoning ordinance under Pennsylvania law. *Penn Township,* 196 F.3d at 475.

Although APT claims that nearly all of the decisions made by the ZHB were not supported by substantial evidence, there is only one decision that I need to review under that standard: the ZHB's decision to deny APT's application for a variance under local zoning law. Ordinance No. 77 permits the ZHB to grant a variance only if the applicant can establish that five (5) prerequisites are met. (R.R. No. 20, § 1002(B)). First, APT must show that there are unique physical circumstances peculiar to the property and that the provisions of the zoning ordinance inflict undue hardship, given those physical con-

straints. *Id.; see also* 53 P.S. § 10910.2. Second, it must show that the property cannot be developed in strict conformity with the ordinance. (R.R. No. 20, § 1002(B)); 53 P.S. § 10910.2. Third, APT must show that it did not, itself, create the unnecessary hardship. (R.R. No. 20, § 1002(B)); 53 P.S. § 10910.2. Fourth, it must show that the variance will not alter the essential character of the neighborhood or the district where the property is located. (R.R. No. 20, § 1002(B)); 53 P.S. § 10910.2. Finally, it must show that the variance requested represents the minimum variance that will afford relief. (R.R. No. 20, § 1002(B)); 53 P.S. § 10910.2. The ZHB concluded that APT's proof was lacking on all five (5) prerequisites. The issue I confront, therefore, "is whether substantial evidence exists to support the Zoning Board's determination that [APT] had failed to meet its burden of satisfying the requirements for a variance." *City of Scranton,* 36 F.Supp.2d at 228. I conclude that it does.[8]

First, substantial evidence supports the ZHB's conclusion on the first and second prerequisites. At the hearing, APT provided almost no evidence about the physi-

---

**8.** My approach to the substantial evidence issue in this case does not shift the burden of proof on this issue to APT. Rather, the local zoning authority bears the burden of demonstrating its denial is supported by substantial evidence. *Omnipoint v. Penn Forest Township,* 42 F.Supp.2d 493, 498–99 (M.D.Pa.). I do believe, however, that the defendants can meet their burden by demonstrating the lack of evidence offered at the hearing in support of a variance. Imagine the results if local zoning boards could not deny applications for communications towers based on lack of proof. Wireless providers, like APT, could simply apply for a variance without offering any evidence in support of their application. Because the zoning board could not deny the application for want of evidence, it would be forced to automatically grant the variance, lest its decision be subject to reversal by a federal court. Such a result would subvert local zoning authority and be contrary to Congress' intent when it passed the TCA that "the authority of State and local governments over zoning and land use matters" be preserved. H.R. Conf.Rep. No. 104–458, at 207–

208, *reprinted in* 1996 U.S.C.C.A.N. at 222. Rather than read the TCA to create such an absurd result, I find that the defendants can satisfy the substantial evidence standard by pointing to the lack of evidence offered at the hearing in support of a variance.

Nonetheless, there is significant evidence in the record of this case questioning the safety of the proposed tower, its aesthetic impact, property value impact, and affect on a near-by residential area. (Tr. 41–43, 56, 60–61, 68–69, 76–80, 84–86, 93–94, 101–104, 106–107, 118–119, 125). There was also evidence that the proposed tower would have a tremendous impact on the near-by town of Brownstown. *Id.* at 70–71. This evidence constitutes "substantial evidence" in support of the Board's decision to deny APT's request. Granted, the local citizens did not have the benefit of counsel, and their testimony was not accompanied by elaborate demonstrative aids, expert reports, and colored graphics. Yet, this evidence was straight-forwardly presented and specific enough to support the Board's decision.

cal characteristics of the property in question. Mr. Tuttle's comment that topography is the "deciding factor pretty much usually where a lot of sites are placed," (Tr. at 29), is one of the only comments about the topography of the property in question that APT made during the hearing. Instead of focusing on the characteristics of the property, APT fixed on the quality of service that it could provide to its customers. In particular, APT argued that it needed the variance because it had to "provide seamless coverage as required under its FCC license." (R.R. No. 3(d), Attach. B, ¶ 15; Tr. at 29, 36). APT never provided a description of how the particular land in question was unique and how its alleged hardship was directly related to the unique characteristics of the land. Recognizing the absence of such evidence, the ZHB was certainly entitled to find that APT did not offer sufficient proof on the first two prerequisites for a variance.

Substantial evidence also supports the Board's decision that APT did not prove the third prerequisite for a variance, i.e., that APT did not create the hardship. APT's tower design called for a tower height of 164 feet, nearly five (5) times the height restriction of thirty-five (35) feet in the CS district. (*Compare* Tr. at 20 to R.R. No. 20, § 802(C)). APT presented no evidence explaining why a tower height of less than 164 feet would prevent it from closing its gap in service. Further, it adduced no evidence of its efforts to acquire other properties, locate on other sites, or explore alternative tower designs. Although APT argued that it did not create its hardship because it was merely trying to satisfy the requirements of its FCC license, (Tr. at 84), the Board found otherwise. Based on the record before the Board, I am in no position to disagree. APT may be required to provide "seamless coverage" by its FCC license, but it is not required to build towers in certain locations or at certain heights. Those are decisions that are made by APT itself. Consequently, the ZHB had substantial ev-

idence to reject APT's request for a variance for lack of proof on the third element.

Third, substantial evidence supports the Board's decision on the fourth prerequisite for a variance, whether granting the variance will alter the essential character of the neighborhood. First, the Board found that there was a significant difference between the water tank already located on the site and APT's proposed communications tower. For instance, the communications tower was going to be 164 feet high, much higher than the water tank. Second, the Board also believed that APT did not adequately address concerns raised about the effect the proposed communications tower would have on property values. At the hearing, several citizens raised concerns that their property values would decrease if the tower was built. *Id.* at 60–62; 77–80. These citizens noted that their property values were determined based on the existence of the water tank. *Id.* Although APT assured the citizens that the communications tower would not decrease property values, it admitted that a property value study had not been completed for the area in question. *Id.* at 82. Once again, the ZHB was entitled to conclude that APT had not met its burden on the fourth prerequisite for a variance.

Finally, the Board's decision on the fifth prerequisite is also backed up by substantial evidence. To obtain a variance, APT had to prove, *inter alia,* that the variance requested was the minimum variance needed to afford relief. When put to its proof, however, APT came up short. In its written variance request, APT offered the following proof on this prong: "A variance, if granted, is the minimum variance that will afford relief." (R.R. No. 3(d), Attach. B, ¶ 15). The ZHB need not accept such a conclusory statement as proof that a variance is needed. To back up this statement, APT officials noted only that they would build their tower "as low as we can to provide the best level of service." (Tr. at 33). Nonetheless, as the

Board found, "the best level of service" is not the standard that the ZHB must apply in deciding to grant a variance. Without evidence in the record that alternative heights or sites were thoroughly considered and rejected, APT cannot prove that it is entitled to a variance. The ZHB's conclusion concerning the fifth prerequisite is certainly supported by substantial evidence.

A common theme runs through the ZHB's decision: APT failed to produce any evidence that it considered alternative tower heights and designs, or that it sought to locate on different sites. APT's evidence, therefore, is similar to the evidence presented to the City of Scranton in *Omnipoint v. City of Scranton.* In that case, Omnipoint sought a variance from Scranton's zoning ordinance in order to place its communications antennae in a small area of North Scranton. *City of Scranton,* 36 F.Supp.2d at 229. In particular, Omnipoint argued that in order to avoid a "gap" in its coverage, it had to locate its antennae in the proposed area. The zoning board rejected its request for a variance and the district court upheld that rejection, finding that the decision was based on substantial evidence. *Id.* The court held that Omnipoint was required to present evidence to the zoning board on two points: 1) that the coverage "gap" could not have been cured by moving the proposed site; and 2) that no other viable alternatives existed to cure the coverage "gap." *Id.* at 231. Omnipoint had failed to address these issues. *Id.*

Like Omnipoint, APT also produced no evidence about its efforts to cure its alleged gap by building at other locations or by using other tower heights or designs. *Id.; see also Gearon & Co. v. Fulton County,* 5 F.Supp.2d 1351, 1354–55 (N.D.Ga.1998) (finding a denial of variance proper where personal communications services provider failed to demonstrate that there were no other available sites that could be utilized to cure gaps in coverage). Absent such evidence, the ZHB was

entitled to find that APT did not satisfy the requirements for a variance under Ordinance No. 77 and Pennsylvania law. Because the ZHB's decision denying APT's request for a variance was based on substantial evidence, I will grant judgment in favor of defendants on this claim.

### IV

#### A

■ Along with its claims under the TCA, APT also contends that Lower Yoder's zoning ordinance is improperly exclusionary in violation of Pennsylvania law. Under Pennsylvania law, a zoning ordinance, like the one at issue in this case, is presumed to be valid and constitutional. *Benham v. Board of Supervisors of Middletown Township,* 22 Pa.Commw. 245, 349 A.2d 484, 487 (1975). Indeed, there is a "heavy burden on anyone challenging the ordinance to prove [the] contrary." *Id.* This presumption of validity can be overcome only in those rare instances when the ordinance excludes an otherwise legitimate use. *Farrell v. Worcester Township Board of Supervisors,* 85 Pa.Commw.Ct. 163, 85 Pa.Cmwlth. 163, 481 A.2d 986, 989 (1984). Exclusionary ordinances can be either *de jure* or *de facto.* A *de jure* exclusion is one that, "on its face, totally bans a legitimate use." *Farrell,* 481 A.2d at 989. In contrast, a *de facto* exclusion "is established where the ordinance permits a use on its face, but when applied acts to prohibit the use throughout the municipality." *Id.* If the party challenging the ordinance, presents sufficient evidence of just such an exclusion, then the burden shifts to the municipality to show that the ordinance bears a substantial relationship to the health, safety, and welfare of the community. *Fernley v. Board of Supervisors of Schuylkill Township,* 509 Pa. 413, 502 A.2d 585, 597 (1985).

■ Such a burden shifting is not necessary in this case because APT has failed to produce sufficient evidence that the Lower Yoder ordinance is exclusionary.

First, the ordinance is manifestly not a *de jure* exclusion. Contrary to APT's repeated assertions, the ordinance does not expressly prohibit communications towers in Lower Yoder Township. *See supra* IIIA. As noted above, the ordinance provides for the construction of such towers in its light industrial or "L" district. *Id.* Consequently, Ordinance No. 77 does not "on its face, totally ban[ ] a legitimate use." *Farrell,* 481 A.2d at 989; *see also Zajac v. Zoning Hearing Board of Mifflin Township,* 41 Pa.Commw. Ct. 7, 10, 41 Pa. Cmwlth. 7, 398 A.2d 244, 246 (1979) ("to avoid being exclusionary, an ordinance need not allow a use absolutely, as a permitted use, but may allow it conditionally by way of special exception"); *D.C. Guelich Explosives Co. v. Zoning Hearing Board of Mifflin Township,* 105 Pa. Cmwlth. 232, 236, 523 A.2d 1208, 1211 (1987) (holding that ordinance did not exclude storage of explosives when warehousing and storage facilities were permitted in industrial districts, even though Township may not have sufficient space in industrial districts to meet all state and federal requirements pertaining to the storage of explosives).

Second, Lower Yoder's ordinance does not amount to a *de facto* exclusion of communications towers. In order to overcome the presumption of Ordinance No. 77's constitutionality, APT must show that the ordinance "effectively excludes the construction of any communications towers throughout the Township." *Penn Township,* 196 F.3d at 476. In other words, to succeed on its exclusionary zoning claim, APT must prove that "no telecommunications provider, including itself, could build a functional tower" in Lower Yoder's L district. *Id.* at 476. "While APT claims that its evidence did just that, [my] review of the record indicates that it did not." *Id.* at 477.

APT's only evidence on this issue comes from the affidavit of Patrick Tuttle, the radio frequency engineer for APT. Although Mr. Tuttle states that "the L District is not a suitable area for a functional communications tower for APT," dkt. no. 22, ¶ 16, he does not provide sufficient proof about whether other service providers could build in the L district. First, Mr. Tuttle states that the district is "*unlikely* to be suitable for any wireless provider which seeks to provide coverage on the major roadways in the area." *Id.* (emphasis added). Second, he states that "[g]iven the general technical requirements for other wireless systems, a communications tower in the L District would not provide coverage on Routes 56 and 271 for other wireless systems." *Id.* ¶ 20. Such general statements about other providers are insufficient to meet APT's "heavy burden" to rebut the presumption of Ordinance No. 77's constitutionality. *Penn Township,* 196 F.3d at 476. As the statements themselves show, Mr. Tuttle is not even sure about the capability of other providers because he tempers his first statement with the word "unlikely." The Third Circuit has cautioned that "an affidavit that is essentially conclusory and lacking in specific facts is inadequate" to create a genuine issue of material fact on a summary judgment motion. *Maldonado,* 757 F.2d at 51. I find that Mr. Tuttle's statements about other providers are lacking in specificity and, thus, do not constitute sufficient evidence about whether other providers can build a functional tower in Lower Yoder's L district.

Indeed, Mr. Tuttle's attempt to make general, unsupported, statements about what other providers can and cannot do is completely at odds with the undisputed evidence presented by ATP at the June 30th hearing of this matter. At that hearing, Mr. Tuttle argued that every wireless provider is different. "Each system is kind of like a puzzle. What may work for one company may not necessarily work for another." (Tr. at 73); *see also* dkt. no. 22, ¶ 13 ("[c]ellular systems also differ from one another . . . . because each system is designed differently, different systems may require sites in different locations . . . .").

In addition, at the hearing, counsel for APT stated that "[d]ifferent systems have different sites in different areas. So what works for one company, depending on where its other sites are, because all sites have to work together, won't necessarily work for another company." (Tr. at 74–75). To prove that Lower Yoder's ordinance is exclusionary, APT must account for these differences. It must show that "other providers could not use any of [the L district land] to build a tower that would functionally meet their systems' needs." *Penn Township*, 196 F.3d at 477. At a minimum, this requires some showing about the coverage needs and technological capabilities of different providers. Without such evidence, APT cannot meet its burden of proving that Ordinance No.77 is exclusionary.

*Penn Township* is, once again, controlling. In that case, APT claimed that Penn Township's zoning ordinance was exclusionary because it restricted communications towers to the M or light industrial districts. Although APT had presented evidence that it could not build a functional tower in the M district, the Third Circuit found that APT failed to produce evidence about whether other providers could build in the M districts. *Penn Township*, 196 F.3d at 476.

> It is simply not true, as APT maintains, that the record contains evidence that all wireless providers' systems suffer from the same gap and are prevented from filling their gaps by Ordinance No. 109. Indeed, APT's counsel told the ZHB just the opposite. In response to a question regarding other providers' needs to locate in the Township, APT's counsel stated:
>
> > . . . . All systems are different. Each company does not necessarily have to have a facility in each municipality. Because of the system difference among the carriers, where APT may have a facility Sprint doesn't. There could possibly be a facility that AT &

> T needs but that APT does not require.
>
> \*   \*   \*   \*   \*   \*
>
> But, again, simply because there are different carriers who have licenses for the same areas, it does not mean that each one will require a tower at the same spot.

The fact that the design APT has chosen for its system enables it to erect the tower that it wishes to build only on a relatively small portion of the land in the M Districts does not make Ordinance 109 exclusionary. Pennsylvania's rule against exclusionary zoning does not impose upon a township the duty to assure that all providers, regardless of the systems they have chosen to construct, will have a suitable site for a functioning tower within the Township. *To be exclusionary, the ordinance must effectively foreclose not only APT's use, but all use.*

*Id.* at 476–77 (emphasis added). Because APT failed to produce evidence about whether other providers could build a tower in the M district that would meet their needs, the Third Circuit held that Penn Township's ordinance was not exclusionary. *Id.* at 478.

In this case, APT suffers from the same lack of proof that it did in *Penn Township*. "Pennsylvania law imposed a substantial burden upon APT to rebut Ordinance [No. 77's] presumption of constitutionality." *Id.* at 478. By failing to offer specific proof concerning other providers, APT failed to meet its burden. I will grant judgment in favor of the defendants on this claim.

## V

APT's final claims are under the United States Constitution. Applying my earlier analysis to these claims, I quickly dispose of both of them.

## A

██ APT first alleges that the defendants violated its substantive due process

rights under the 14th Amendment. A plaintiff making a substantive due process claim has the burden of showing that the decision of the local zoning board was "arbitrary or irrational." *DeBlasio v. Zoning Bd. of Adj.,* 53 F.3d 592, 601 (3d Cir.1995); *see also Pace Resources, Inc. v. Shrewsbury Twp.,* 808 F.2d 1023, 1035 (3d Cir. 1987). Based on my analysis above, I conclude that the Township's decision denying a variance to APT was not arbitrary or irrational. The Township had a legitimate reason for its decision. Simply put, APT did not produce sufficient evidence in front of the ZHB to merit the granting of its request for a variance. Because the undisputed evidence shows that the defendants' decision to deny APT's request for a variance was wholly reasonable, I will grant judgment in favor of the defendants on this claim.

**B**

 APT next claims that the defendants violated its right to equal protection under the 14th Amendment. Such a claim is made out when plaintiff proves that it was treated differently from similarly situated landowners without any reasonable basis. *See City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Anselma Station v. Pennoni Assocs.,* 654 A.2d 608, 616 (Pa.Cmwlth.1995); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1478 (3d Cir. 1990). In other words, this claim is nearly identical to the TCA's requirement that municipalities not "unreasonably discriminate among providers of functionally equivalent services." 47 U.S.C. § 332(c)(7)(B)(i)(I). I adhere to my previous analysis on this issue, *see supra* IIIB, and will grant judgment in favor of the defendants on this claim.

**VI**

What the Third Circuit noted in *Penn Township* is true in this case as well. "The record is remarkable not for what it contains, but for what it does not." *Penn*

*Township,* 196 F.3d at 478. Time and again, APT has failed to produce any evidence on essential elements upon which it bears the ultimate burden of proof at trial. *See Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. In accordance with the foregoing reasons and stated authorities, I will grant judgment in favor of the defendants, Lower Yoder Township and its Zoning Hearing Board, on all counts in APT's amended complaint. Dkt. no. 12.