705 A.2d 427

CROWN COMMUNICATIONS, Appellant,

v.

ZONING HEARING BOARD OF THE BOROUGH OF GLENFIELD and John A. Straka, Appellees.

BELL ATLANTIC MOBILE SYSTEMS, INC., Appellant,

v.

ZONING HEARING BOARD OF THE TOWNSHIP OF O'HARA and Township of O'Hara and Fox Chapel Authority, Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 16, 1997.

Decided Dec. 23, 1997.

268

William R. Sittig, Pittsburgh, for Crown Communications.

John A. Straka, III for John A. Straka.

Richard J. Klixbull, Coraopolis, for Zoning Hearing Bd. of Borough of Glenfield.

William R. Sittig, Jr., John A. Tumolo, Joseph Sabino Mistick, Pittsburgh, for Bell Atlantic Mobile Systems.

Robert W. Goehring, Pittsburgh, for Zoning Hearing Bd. of Tp. of O'Hara.

Philip J. Weis, A. Bruce Bowden, Pittsburgh, for Tp. of O'Hara.

Clifford B. Levine, Jennifer Loewen Cavill, Pittsburgh, for Fox Chapel Authority, D.L. Armstrong, D.B. Boslar, F.J. Sauereisen, J.L. Podmilsak, R.J. Scalabassi, S.B. Ferguson and H.W. Sphar, Jr.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

The issue in these consolidated cases is whether private business entities may be considered public utilities for zoning

purposes when the applicable zoning ordinances do not define "public utility."

Crown Communications, a sole proprietorship engaged in the business of providing facilities for wireless communications, obtained a perpetual easement from the Borough of Glenfield to construct and maintain a 375 foot communications tower and equipment shed on a residential lot measuring 100 feet by 100 feet. On or about August 3, 1994 Crown applied for a building permit with the Borough of Glenfield.

Although the zoning ordinance of the Borough of Glenfield establishes four zoning districts, none of them permits communication towers by right. Article IX, Section 29(c) of the ordinance provides:

In appropriate cases, the Zoning Hearing Board on appeal, may issue a permit ... for the ... use of land in a suitable location by a public service corporation for public utility purposes which the Board determines reasonable [sic] necessary for the public convenience or welfare.

Article III, Section 10 of the zoning ordinance provides:

*Uses Not Provided For.* Whenever in any district established under this Ordinance, a use is neither specifically permitted or denied and an application is made by a property owner to the Zoning Inspector and Planning Commission for such use, the Zoning Inspector and Planning Commission shall refer the application to the Planning Commission to permit the use or deny the use. The use may be permitted if it is similar to and compatible with permitted uses in the district and in no way is in conflict with the general purpose and intent of this Ordinance.

The zoning hearing board found that Crown is a non-corporate business entity operating for-profit; that the proposed tower will be available for rent at an unregulated rate; that Crown is not regulated by any government agency; and that the property is located in a residential district. The board concluded as a matter of law that Crown is not a public service corporation and denied its application for a building permit.

Crown appealed the zoning hearing board's decision to the Court of Common Pleas of Allegheny County. The trial court reversed the board, holding that because certain lessees of space on the tower would be public utilities, the use was permissible under Section 10 of the ordinance.

On appeal, the Commonwealth Court reversed, holding that Crown is not a public service corporation under Section 29(c) of the ordinance, and is not, therefore, eligible for the expanded definition of uses provided in Section 10.

In 1994 Bell Atlantic Mobile (Bell Mobile) negotiated with the Fox Chapel Authority (Authority) to erect a new transmission platform on top of a water tower operated by the Authority. The water tower is located in what has become a residential neighborhood. The transmission platform project also included the construction of a fence and an equipment shed. The proposed transmission platform would consist of nine antennas which would project six feet over the tower.

With the Authority's permission, Bell Mobile applied to the O'Hara Township Zoning Hearing Board (board) for height variances for the antennas and the fence. After a hearing, the board denied Bell Mobile's application for variances. The board's findings of fact included that the property in question was located in an R–1 residential zoning district and that the antennas, building and use as proposed were not permitted in this district. The board based its decision in part on potential nuisance effects of the additional structures and on the fact that there are other alternative areas more removed from residential districts.

Bell Mobile appealed to the Court of Common Pleas of Allegheny County, arguing that its variance request should have been granted under the O'Hara Township Zoning Ordinance which allows "essential services" offered by "public utilities." Section 72–11(A) of the O'Hara Zoning Ordinance allows for "essential services" in special residential districts, and Section 72–66 defines "essential services" as various services offered by "public utilities or municipal or other governmental agencies." The court rejected Bell Mobile's argument

that it is a public utility, citing the Public Utility Code, 66 Pa.C.S. § 102 as follows:

> the term 'public utility' does not include: (iv) Any person or corporation, not otherwise a public utility, who or which furnishes mobile domestic cellular radio telecommunications service.

The court determined that because Bell Mobile is not a public utility, it does not qualify for a variance under Section 72–11(A) of the O'Hara Township Zoning Ordinance.

Bell Mobile appealed this decision to the Commonwealth Court, which affirmed. The Commonwealth Court agreed with the trial court that Bell Mobile is a private, non-regulated company, not subject to the rates and tariffs of the Public Utility Commission, and that it is not, therefore, eligible for variance under Section 72–11(A) of the O'Hara Township Zoning Ordinance.[1]

 In both of these consolidated cases, the Courts of Common Pleas took no additional evidence. Our standard of review, therefore, is limited to determining whether the zoning hearing boards committed either a manifest abuse of discretion or an error of law when they denied the applicants' requests to construct communications apparatus. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 639 (1983). An abuse of discretion exists when the essential findings of the board are not supported by substantial evidence, or such evidence as a reasonable mind would find adequate to support a conclusion. *Valley View, Id.*; *Abbey v. Zoning Hearing Board*, 126 Pa. Cmwlth. 235, 559 A.2d 107 (1989).

We granted allocatur in this case to address the limited issue of what test should be applied to determine whether a business entity is a public utility for zoning purposes where the zoning ordinance does not define the term.

1. Bell Atlantic, unlike Bell Mobile, is a public utility under the Utility Code. It is regulated by the Public Utility Commission and is subject to the rates and tariffs of the commission.

■ The Pennsylvania Utility Code defines "public utility" as follows:

> the term "public utility" does not include ... (iv) any person or corporation, not otherwise a public utility, who or which furnishes mobile domestic cellular radio telecommunications service.

66 Pa.C.S. § 102(2)(iv). Clearly, both Bell Mobile and Crown are excluded from the definition of public utility by the Utility Code. Both Bell Mobile and Crown are simply private business enterprises which are not regulated by the Public Utility Commission.

The Pennsylvania Public Utility Realty Tax Act offers the following definition of "public utility":

> any person, partnership, association, corporation or other entity furnishing public utility service under the jurisdiction of the Pennsylvania Public Utility Commission or the corresponding regulatory agency of any other state or of the United States....

72 P.S. § 8101–A(2). Even this expanded definition, which accords "public utility" status to business entities which are regulated by *some* state or federal agency, does not provide for business entities which are completely unregulated.

Among the several definitions of "public utility" offered by Black's Law Dictionary is the following:

> To constitute a true "public utility," the devotion to public use must be of such character that the public generally, or that part of it which has been served and which has accepted the service, has the legal right to demand that that service shall be conducted, so long as it is continued, with reasonable efficiency under reasonable charges.

(Fourth Edition).

The Commonwealth Court in *Commonwealth of Pennsylvania v. WVCH Communications, Inc.,* has stated:

> The distinctions between a public utility and a business entity which is not a public utility are well known. For example, a public utility holds itself out to the public generally and may not refuse any legitimate demand for service,

while a private business independently determines whom it will serve.

23 Pa.Cmwlth. Ct. 292, 296, 351 A.2d 328, 330 (1976). The court then proceeded to define "public utility corporation":

In order to qualify as a public utility corporation, WVCH would have to prove that it is required by law to: 1) serve all members of the public upon reasonable request; charge just and reasonable rates subject to review by a regulatory body; 3) file tariffs specifying all of its charges; and 4) modify or discontinue its service only with the approval of the regulatory agency.

*Id.* 351 A.2d at 330.

These definitions of "public utility" are not, of course, exhaustive, but they do contain a common thread. Implicit in each is that a public utility provides essential services to the public at large, responding to any reasonable request for service without discrimination, and that it conducts its business under the watchful eye of government, which ensures that its rates will be reasonable and its provision of service responsible. No such requirements are made of non-regulated business activity.

Because public utilities operate within this framework of regulation, provision must be made in zoning codes and elsewhere for utilities to provide their services without undue restriction. Government cannot simultaneously demand the provision of essential services, but then regulate the provider in such a way that it becomes impossible for the utilities to provide the services. For this reason, the zoning codes at issue in this case make special provisions for public utilities which, in effect, exempt them from certain restrictions which apply to other business activity.

■ We hold, therefore, that when zoning ordinances fail to define the term "public utilities," the term shall be understood to mean any business activity regulated by a government agency in which the business is required by law to: 1) serve all members of the public upon reasonable request; 2) charge just and reasonable rates subject to review by a regulatory

body; 3) file tariffs specifying all of its charges; and 4) modify or discontinue its service only with the approval of the regulatory agency.

■ In the Crown case, the first question is whether Crown is a "public service corporation" which proposes to build a tower for "public utility purposes." Clearly, the answer is in the negative. Crown is a private, non-regulated business. Crown, therefore, is ineligible under Article IX, Section 29(c) for a variance. With respect to Article III, Section 10, which allows uses not specifically permitted or denied which are not incompatible with the general scheme of the ordinance, Crown's application was also properly denied, for Section 10 must be understood to operate within the specific requirements of Article IX, Section 29(c). To hold otherwise would render Section 29(c) meaningless. Accordingly, the board did not abuse its discretion in denying Crown's request.

■ The Bell Mobile case turns simply on the definition of "public utility." Since Bell Mobile is not a public utility, it was not entitled to a variance for its antennas under Section 72–11(A) of the O'Hara Zoning Ordinance, and the board did not err in denying its request for a variance.

The Order of the Commonwealth Court in No. 34 W.D. Appeal Docket 1997, the Crown Communications case, is affirmed. the order of the Commonwealth Court in No. 36 W.D. Appeal Docket 1997, the Bell Mobile case, is affirmed.