**Michael and Janet POLAY, Appellants,**

v.

**BOARD OF SUPERVISORS OF WEST VINCENT TOWNSHIP, The Zoning and Code Enforcement Administration of the Township of West Vincent and Concerned Citizens of West Vincent Township, Inc.**

Commonwealth Court of Pennsylvania.

Argued March 6, 2000.

Decided April 24, 2000.

Reargument Denied June 20, 2000.

David A. Malman, West Chester, for appellants.

Richard H. Morton, West Chester, for appellee, Bd. of Supervisors of West Vincent Twp.

Anthony Kukal, Philadelphia, for appellee, Concerned Citizens of West Vincent Twp.

Before SMITH, J., FRIEDMAN, J., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Michael and Janet Polay (the Polays) appeal from an order of the Court of Common Pleas of Chester County (trial court) affirming, and adopting, the May 14, 1998 decision of the Board of Supervisors of West Vincent Township (Board). In that decision, the Board denied the Polays' challenge to the validity of the Zoning Ordinance of West Vincent Township (Ordinance), concluding that the Ordinance does not unconstitutionally exclude, as a land use, the collection and removal of spring water for commercial purposes. We affirm.

The Polays own approximately 10.8 acres of land on St. Andrews Lane in an R–2 Residential Zoning District in West Vincent Township (Township), Chester County. The Polays' property is the situs of several springs and a pond, which collectively form the source for a substantial flow of groundwater to the surface of the property. This groundwater flow leaves the Polays' property in an overland watercourse and eventually forms the headwaters of a tributary to Black Horse Creek. (Board's Findings of Fact, Nos. 1, 3, 5.)

The Polays would like to construct a new "spring house" over one of the springs and pipe up to 100,000 gallons of water per day to a facility on their property containing storage tanks. The Polays also would like to contract for the sale of water "in bulk" and transport the water from their property in 5,000–gallon tanker trucks. (Board's Findings of Fact, Nos. 14–16.)

The Polays believe that the Township's Ordinance unconstitutionally excludes as a land use the collection and removal of spring water for commercial purposes within the Township. Thus, the Polays filed a validity challenge with the Board pursuant to sections 609.1, 909.1 and 916.1 of the Pennsylvania Municipalities Planning Code (MPC).[1] The Polays proposed an amendment to the Ordinance, adding the collection and removal of spring water for commercial purposes as a permitted use within the Township's R–2 zoning district.

---

1. Section 609.1 of the MPC, Act of July 31, 1968, P.L. 805, added by section 10 of the Act of June 1, 1972, P.L. 333, *as amended*, 53 P.S. § 10609.1, states that a landowner who desires to challenge on substantive grounds the validity of a zoning ordinance which prohibits or restricts the use or development of land in which the landowner has an interest may submit a curative amendment to the governing body with a written request that the challenge and proposed amendment be heard and decided as provided in section 916.1 of the MPC.

Section 916.1(a)(2) of the MPC, added by section 99 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.1(a)(2), states that a landowner who, on substantive grounds, desires to challenge the validity of an ordinance which prohibits or restricts the use or development of land in which the landowner has an interest shall submit the challenge either to the zoning hearing board or to the governing body under section 909.1(b)(4) of the MPC, together with a request for a curative amendment under section 609.1 of the MPC.

Section 909.1(b)(4) of the MPC, added by section 87 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1, states that the governing body shall have exclusive jurisdiction over applications for curative amendments to a zoning ordinance pursuant to sections 609.1 and 916.1(a)(2) of the MPC.

The Board held several hearings on the matter. Various entities entered appearances, including the Township Administration, the Concerned Citizens of West Vincent, Brandywine Valley Association, St. Andrews Church and several nearby property owners. After considering the evidence presented at the hearings, the Board made findings of fact and concluded that the Ordinance does not exclude the collection and removal of spring water for commercial purposes, but allows it by special exception in the Township's LI–Light Industrial District. The Board pointed out that section 1102(A)(4) of the Ordinance permits "[p]ublic utility operating facilities" in an LI District and that section 1102(C)(2) of the Ordinance permits, by special exception, "[a]ny use similar to the above permitted uses not specifically provided for herein." (See R.R. at 86a, 88a.) The Board reasoned that the collection and removal of spring water for commercial purposes is similar to using land for the operation of a public utility operating facility. Thus, the Board rejected the Polays' validity challenge. The Polays filed an appeal with the trial court, which affirmed and adopted the Board's decision.

2. Where the trial court has taken no additional evidence, our scope of review is limited to determining whether the Board committed an error of law or an abuse of discretion. *Overstreet v. Zoning Hearing Board of Schuylkill Township*, 152 Pa.Cmwlth. 90, 618 A.2d 1108 (1992). The Board abuses its discretion if its findings are not supported by substantial evidence. *Id.*

3. We note that the Board found that the Polays' proposed use of their land consists of three elements: (1) the collection, capture or extraction of water from a spring; (2) the storage of the water; and (3) the distribution or transport of the water in tanker trucks. (Board's Findings of Fact, No. 18.) In its decision, the Board pointed out that the Polays' own expert witness, Larry S. Waetzman, acknowledged that the Polays' proposed use has the following characteristics in common with a public water company operating facility: (1) diverting and impounding water; (2) pumping; (3) storing water in tanks; (4) using buildings, structures and valves for those purposes; and (5) using underground pipes, pumps and valves. (See R.R. at 71a–72a.) The Board also noted that, according to

On appeal to this court,[2] the Polays first argue that the Board erred in concluding that the Ordinance is not exclusionary on the basis that the Ordinance permits the collection and removal of spring water for commercial purposes in the LI District. We disagree.

As indicated above, section 1102(A)(4) of the Ordinance permits a public utility operating facility in an LI District, and section 1102(C)(2) of the Ordinance permits, by special exception, any "use similar to" a public utility operating facility.[3] In other words, section 1102(C)(2) of the Ordinance requires only that the *use* of the land be *similar to* a public utility operating facility; the provision does *not* state that the *user* of the land must be a public utility, which is the Polays' position here. Indeed, if we interpreted section 1102(C)(2) as the Polays' interpret it, to require that the land user be a public utility, then the words "similar to" would have no effect. Clearly, an operating facility run by a public utility would not be *similar to* a public utility operating facility; it would *be* a public utility operating facility.[4] Because

Waetzman, the Polays' proposed use is different from a public water company operating facility to the extent that the Polays plan to distribute their water by tanker truck instead of by pipe; however, Waetzman acknowledged that a public water company is not precluded from distributing water by tanker truck. (Board's decision at 16.)

In addition to the testimony of Waetzman, the Board considered the testimony of Wayne Grafton, the Township Administration's expert witness. Grafton opined that the Polays' proposed use "would be identical" to using the land for a public water operating facility. (R.R. at 44a.) The Board specifically found Grafton's testimony to be credible. (Board's decision at 17.) When a trial court takes no additional evidence, as here, the Board is the sole judge of witness credibility, and we are bound by those credibility determinations. *See Szewczyk v. Zoning Board of Adjustment of City of Pittsburgh*, 654 A.2d 218 (Pa.Cmwlth. 1995).

4. At oral argument, the Polays cited *Hernley Family Trust v. Fayette County Zoning Hearing Board*, 722 A.2d 1115 (Pa.Cmwlth.1998), *ap-*

we must construe the words and phrases of section 1102(C)(2) according to their common and approved usage,[5] the Polays' first argument must fail.

■ The Polays also argue that section 1904(B) of the Ordinance excludes the collection and removal of spring water for commercial purposes from the Township. We disagree.

Section 1904(B)(1) of the Ordinance provides that the "excavation or extraction of clay, sand, gravel, rock or other minerals shall be permitted only . . . [a]s part of the construction of a building or the construc-

*peal denied*, 560 Pa. 712, 743 A.2d 924 (1999), to support their position. In that case, this court held that, in order to receive a special exception under the local zoning ordinance to construct and operate a natural gas compressor as a "public service facility," the landowner must be a "public utility." This was because the definition of "public service facility" set forth in the local zoning ordinance stated clearly that the landowner must be a "utility." Here, however, the Ordinance does not require a particular type of landowner; rather it requires only that the landowner's "use" be "similar to" a public utility operating facility.

Similarly, the Polays' reliance on *Crown Communications v. Zoning Hearing Board of the Borough of Glenfield*, 550 Pa. 266, 705 A.2d 427 (1997), is unwarranted. In that case, a provision of the local zoning ordinance permitted the use of land "by a public service corporation for public utility purposes." *Id.* at 270, 705 A.2d at 429. Another provision of the ordinance allowed uses that are "similar to and compatible with permitted uses." *Id.* Our supreme court stated that the latter provision "must be understood to operate within the specific requirements" of the former provision. *Id.* at 275, 705 A.2d at 432. In other words, the court read the former provision to permit the use of land "by a public service corporation for public utility [and similar] purposes." *Id.* Concluding that a business seeking to construct a communications tower is not a "public service corporation," the court upheld the denial of a permit under both provisions of the ordinance. Here, we are not asked to address whether a *landowner* who wishes to collect and remove spring water for commercial purposes must be a public service corporation, or a public utility, under the Ordinance. We are only asked to decide if the *use* is permitted within the Township. Therefore, the holding in *Crown* is not controlling.

tion or alteration of a street."[6] Read in context, it is apparent that section 1904(B) deals exclusively with building or street construction. The provision says nothing about water or excluding the collection and removal of spring water for commercial purposes from the Township. Thus, the Polays' second argument must fail.

■ Finally, the Polays argue that the Board erred in concluding that the Polays failed to demonstrate that there are no "commercially viable" springs within the LI zoning district.[7] We disagree.

5. Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903; *Heck v. Zoning Hearing Board for Harvey's Lake Borough*, 39 Pa.Cmwlth. 570, 397 A.2d 15 (1979) (stating that the rules of statutory construction apply to both statutes and ordinances).

6. The complete text of section 1904(B) of the Ordinance is as follows:

> The excavation or extraction of clay, sand, gravel, rock or other minerals shall be permitted only under the following conditions:
> 1. As part of the construction of a building or the construction or alteration of a street.
> 2. The surface of the lot shall not be graded to a level below that of adjoining streets.
> 3. Excavation shall not be conducted in a way which will leave loose boulders exposed.
> 4. A minimum of three (3) inches of topsoil shall cover disturbed areas and be reseeded with an appropriate groundcover within one (1) year.
> 5. Provision is made by the applicant for restoration of natural groundcover and control of erosion.
> 6. A final grading plan be submitted to the Township.

(R.R. at 90a–91a.)

7. We note that, in challenging the validity of a zoning ordinance, a landowner may present a *de jure* or a *de facto* challenge. In a *de jure* challenge, the landowner alleges that the ordinance totally excludes a proposed use. *H.R. Miller Co., Inc. v. Board of Supervisors of Lancaster Township*, 529 Pa. 478, 605 A.2d 321 (1992). Here, the Polays alleged that the Ordinance totally excludes the collection and removal of spring water for commercial purposes as a use within the Township. (*See* O.R., Validity Challenge.) Thus, the Polays presented the Board with a *de jure* challenge.

This is in contrast to a *de facto* challenge, where the landowner alleges that the ordi-

To establish the absence of "commercially viable" springs within the LI zoning district, the Polays presented the testimony of Mr. Polay and Larry S. Waetzman.[8] Both witnesses testified that there are no springs within the Township's LI zoning district. However, Allen Heist, the Township Manager, testified that there is at least one spring in the LI zoning district, and the Board accepted that testimony. (*See* Board's Findings of Fact, No. 23; Board's decision at 23.) Because the Polays presented no evidence to show that the spring identified by Heist is not "commercially viable," the Polays failed to meet their burden of proof on this issue.

Accordingly, we affirm.[9]

## O R D E R

AND NOW, this 24th day of April, 2000, the order of the Court of Common Pleas of Chester County, dated May 14, 1999, is affirmed.

nance on its face permits the proposed use, but does so under such conditions that the use cannot in fact be accomplished. *Id.* Here, the Polays presented evidence that their proposed use cannot be accomplished in the LI District. Thus, we address above whether that evidence was sufficient to sustain the heavy burden of proof in a *de facto* validity challenge. *See Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975) (stating that one who challenges the validity of the zoning ordinance has a heavy burden of establishing its invalidity).

8. Waetzman is a land planner, not a hydrogeologist, and the Board ruled that it would not accept expert testimony from Waetzman on the question of whether there were "commercially viable" springs in the LI zoning district. (Board's decision. at 22.) The Polays have not challenged that ruling here.

9. Because our decision is dispositive of the case, we need not address the remaining issues raised by the Polays.