**PENNSYLVANIA CELLULAR TELEPHONE CORPORATION, Plaintiff,**

v.

**The ZONING HEARING BOARD BUCK TOWNSHIP and Frank Jones, as Zoning Officer of Buck Township, Defendants.**

No. 3:00–CV–0007.

United States District Court, M.D. Pennsylvania.

Jan. 17, 2001.

---

**636**

Catherine E. Naughton, Fitzpatrick Lentz and Bubba, P.C., Center Valley, PA, for Plaintiff.

Darren Mendrzycki and Robert Panowicz, Wilkes Barre, PA, for Defendant.

## MEMORANDUM

VANASKIE, Chief Judge.

Plaintiff Pennsylvania Cellular Telephone Corporation ("PA Cellular") filed this action under the Telecommunications Act of 1996 ("Telecom Act"), 47 U.S.C. § 332(c), contending that the defendants, the Zoning Hearing Board of Buck Township ("Zoning Board") and Frank Jones, the Township Zoning Officer, improperly denied PA Cellular's request for a special use exception to construct a cellular communications tower in an area of the Township classified as "R–1"—a "residential low-density district." (Buck Township Zoning Ordinance adopted June 18, 1980, attached as Ex. "C" to the Brief in Support of Defendant's Summary Judgment Motion.) PA Cellular seeks both injunctive and mandamus relief. The parties have filed cross-motions for summary judgment.

Having carefully considered the record and the parties' contentions, I find that the Zoning Board's denial of the special use exception on the ground that the proposed tower did not constitute a "public utility building or structure" comported with the procedural requirements of the Telecom Act and was consistent with Pennsylvania law. I also find that PA Cellular has not shown that the decision in this case was neither the product of nor effected "exclusionary zoning." As to PA Cellular's claim that the denial of the special use exception impermissibly prohibits the provision of wireless services, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II), however, I find that Third Circuit precedent counsels that this case be remanded to the Zoning Board to develop a factual record and make pertinent findings of fact.

## I. BACKGROUND

PA Cellular is a private corporation in the business of selling and providing wireless communications systems to the public. (Pl.Stat. of Material Facts, Dkt. Entry 11 at ¶ 4.)[1] PA Cellular is licensed and regulated by the Federal Communications Commission (FCC). (*Id.*)

The wireless telecommunications provided by PA Cellular require transmission of radio signals by antennas mounted on a tower or other structure. (*Id.*, ¶ P.) The antenna structure and related equipment building are referred to as a cell site and provide coverage to a defined geographic area. (*Id.*) Personal communication service ("PCS") providers, like PA Cellular, endeavor to provide continuous service to their customers by arranging cell sites in such a manner as to maintain the transmission of the radio signal as a customer travels from one cell to the next. Transmissions between cell sites operate on a line of sight basis. Consequently, antennae location and height are crucial factors in areas such as Northeastern Pennsylvania, where the terrain is hilly.[2]

PA Cellular is seeking to install a cell site to remedy "an inadequate level of cellular telephone service in the Buck Township area and adjacent region." (*Id.*, ¶ 8.) PA Cellular engineers have identified an area in Buck Township where the erection of a 180 foot high tower will provide an acceptable level of service. (*Id.*, ¶¶ 11, 13.) In proceeding with its plans to improve service in Buck Township and the adjoining area, PA Cellular leased a portion of land owned by Mr. and Mrs. Robert Harrison located near Township Route 445 in Buck Township. (Ex. A to Pl.Stat. of Material Facts, Dkt. Entry 12.) The property is regarded by PA Cellular's engineers as suitable, and is located in a Buck Township R–1 zoning district.[3] The express purpose of a district zoned R–1 is "to provide for larger-lot single-family residences with a density of one house per acre . . . to preserve the more-open rural character of most of the Township." (Buck Twp. Zoning Ordinance, § 6.02.) Structures in the R–1 zone are limited to a height of 35 feet, with the exception of "chimneys, antennae and similar struc-

---

1. Both parties have submitted statements of material facts as to which there is no genuine dispute, as required by Local Rule of Court ("LR") 56.1. Defendants have not contested the accuracy of PA Cellular's statements, which will thus be accepted as true. PA Cellular has not challenged the accuracy of the first seven paragraphs of defendants' statement of material facts. Consequently, the first seven paragraphs will be accepted as true. *See* LR 56.1, fourth unnumbered paragraph ("all material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party").

2. As the court in *Sprint Spectrum L.P. v. Jefferson County*, 968 F.Supp. 1457, 1460 (N.D.Ala. 1997), explained:

   PCS and wide area [specialized mobile radio services] operate by transmitting low power radio signals between mobile, wireless units and fixed antennae mounted on towers, buildings, or other structures. Signals generated by mobile transmitters are fed to electronic cabinets at the base of the antennae, where they are connected to tele-

   phone lines, over which the transmission is routed to ordinary telephone equipment located anywhere in the world. A single antenna and its related equipment cabinet are called a "cell site."

   The distance over which the low-power signals emitted by mobile transmitters may be effectively broadcast to fixed, cell site antennae is limited to a relatively small geographic area, called a "cell." Accordingly, an overlapping, interconnected quilt of cells must be stitched together to provide seamless coverage. Where there is a "gap" in the pattern, a user's call is "dropped" or "disconnected."

3. Buck Township is located in the eastern part of Luzerne County. (Def.Stat. of Material Facts, ¶ 1.) It has a total population of about 500 persons. (*Id.*, ¶ 2.) The zoning ordinance at issue in this case was adopted in 1980. It has five zoning classifications—"C", or conservation district (comprising about 90% of the Township), "R–1" (residential low-density district), "R–2" (residential, medium-density), "B" (business) and "I", industrial. (Exh. "C" to Brief in Support of Defendant's Summary Judgment Motion.)

tures." (Id., § 6.02(b)(8)). Uses permitted by special exception include "public utility buildings and structures (including storage yards)." (Id., § 6.02(a)(3).) Section 7.03(13) of the Zoning Ordinance explains that "public utility buildings and structures are intended to include telephone exchanges, electric stations and substations, and gas, water, and sewage pumping stations and sewage treatment plants . . . ."

On August 27, 1999, PA Cellular filed a special exception use application with the Buck Township Zoning Officer so as to allow for the construction of a wireless communication facility on the leased land. (Exh. B to Pl.Stat. of Material Facts, Dkt. Entry 12 at ¶ 18.) The proposed facility consisted of a 180 foot tall tower and equipment shelter enclosed by an eight foot high chain link fence topped with barbed wire.[4] (Id.) In its application, PA Cellular asserted that its proposed facility qualified for a special use exception as a "public utility building and structure." (Id.) In a "supplemental statement," PA Cellular also contended that its proposed structure was exempt from the maximum building height requirements of the R–1 district, asserting that "transmission towers, antennae and similar structures" were exempted from the 35 foot height restriction.[5]

On October 7, 1999, the Zoning Board conducted a public hearing on PA Cellular's application. (Stat. of Material Facts, Dkt. Entry 11 at ¶ 19.) At the conclusion of the hearing, the Zoning Board voted to table a decision until its solicitor received copies of the pertinent lease and easement agreements. (Id., ¶ 20.) On December 3, 1999, the Zoning Board issued its decision adverse to PA Cellular. (Id., ¶ 21.) The decision did not contain any factual find-

ings. The handwritten explanation for the rejection of PA Cellular's application consisted entirely of the following:

> Does not constitute a public utility and does not fall under the uses permitted by section 6.02(a)3 of the Zoning Ordinance of Buck Township.

(Exh. "D" to Pl.Stat. of Material Facts.)

On January 3, 2000, PA Cellular filed this action, asserting that the defendants improperly denied PA Cellular's request for a special use exception. PA Cellular seeks mandamus and injunctive relief and requests that the Court direct the Zoning Board to grant PA Cellular's request for a special use exception to construct its cellular communications tower on the leased premises in the R–1 district. The parties have cross-moved for summary judgment. Oral argument was heard and the motions are ripe for disposition.

## II. DISCUSSION

"Congress enacted the [Telecom Act] to provide 'a pro-competitive, de-regulatory national policy framework designed to rapidly accelerate private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition.'" APT Pittsburgh Limited Partnership v. Penn Township, 196 F.3d 469, 473 (3d Cir.1999). While seeking to establish such "'a pro-competitive, de-regulatory national policy framework,'" the Telecom Act "expressly preserves the traditional authority enjoyed by state and local governments to regulate land use and zoning, but places several substantive and procedural limits upon that authority when it is exercised in relation to personal wireless service facilities." Id. See generally 47 U.S.C. § 332(c)(7).

---

4. PA Cellular sought to construct a tower because there were no existing tall structures upon which antennas could be placed within the area. (Pl.Stat. of Material Facts, Dkt. Entry 11 at ¶ 14.)

5. This assertion was erroneous, as the ordinance only excepted from the height limitation "chimneys, antennae and similar structures." Notably, "transmission towers" are specifically exempted from the height restriction applicable to the Township's Conservation District.

To assure compliance with congressionally-imposed requirements and limitations, the Telecom Act authorizes federal court review of local zoning decisions impacting the provision of wireless communication services. 47 U.S.C. § 332(c)(7)(B)(v).

Principally at issue in this case are the following two limitations:

(i) The regulation of the placement, construction and modification of personal wireless service facilities by any State or local government or instrumentality thereof ... (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services; and (iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence....

47 U.S.C. § 332(c)(7)(B)(i)(II) and (iii). PA Cellular challenges the Zoning Board's decision that its proposed use does not constitute a public utility building or structure, and contends that, in any event, the Zoning Board's decision constitutes exclusionary zoning in contravention of state law, and has the effect of prohibiting wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

## A. The "Public Utility" Ruling

At the outset, the applicable standard of review of the Zoning Board's decision must be ascertained. Our Court of Appeals has cautioned that the statutory "substantial evidence" standard is to be applied to those aspects of zoning rulings to which deference has been accorded historically in view of the expertise of the local decision makers, i.e., "factual issues made by a state or local authority in the course of applying state and local zoning law...." *APT Pittsburgh,* 196 F.3d at 474. For

example, deference should be accorded to special use exception decisions that are guided by such general standards as whether public services and facilities are adequate for the proposed use, whether access to the site is adequate for emergency services, and whether the proposed use is objectionable in its operation because of noise, fumes, vibrations, etc. (Zoning Ordinance, ¶ 7.02.) Other decisions, however, should be subject to *de novo* review. For example, the substantial evidence standard is "not applicable to the issue of whether a state's denial of an application to construct a personal wireless service facility 'has the effect of prohibiting the provision of personal wireless services.'" *APT Pittsburgh,* 196 F.3d at 475, *citing Cellular Telephone v. Zoning Board of Adjustment of the Borough of Ho–Ho–Kus,* 197 F.3d 64 (3d Cir.1999). Moreover, "[a] decision on the 'exclusivity' of a zoning ordinance under the Pennsylvania Constitution is a legal issue that is not subject to deferential judicial review." *Id.*

In this case, the Zoning Board did not rest its denial of PA Cellular's application on the general and specific factors for ruling on special use exceptions set forth in Article 7 of the Zoning Ordinance. Instead, it ruled that the proposed tower and related wireless communication facility did not fall within the ambit of the uses permitted in the R–1 district by special exception. This decision was not based upon factual findings. Instead, it reflected an interpretation of the special use exception for "public utility buildings and structures." Because such a decision does not rest upon factual findings, the rationale of *APT Pittsburgh* and *Ho–Ho–Kus* counsels that the "substantial evidence" standard is inapplicable to the Zoning Board's decision in this case.[6]

6. There is uncertainty as to whether the Telecom Act requirement of a "decision ... in writing" requires findings of fact supporting the denial or a writing that merely memorializes the ultimate decision. *APT Pittsburgh,* 196 F.3d at 474 n. 4. Because the Zoning

Board decision in this case did not turn upon specific factual findings, the written ruling that it made, memorializing its ultimate conclusion, is adequate for purposes of judicial review. Accordingly, there is no need to decide in this case whether the conclusory writ-

PA Cellular's application rested on the "public utility buildings and structures" special use exception authorized by § 6.02(a)(3) of the Zoning Ordinance. Although the ordinance provides examples of "public utility buildings and structures,"[7] the term "public utility" is not defined. To support their position, the defendants rely primarily on *Crown Communications v. Zoning Hearing Board of the Borough of Glenfield*, 550 Pa. 266, 705 A.2d 427 (1997). In *Crown Communications*, the plaintiff, a cellular telephone company, applied for a building permit on a residential lot. The ordinance provided that "[i]n appropriate cases, the Zoning Hearing Board ... may issue a permit ... for the ... use of land in a suitable location by a public service corporation for public utility purposes...." *Id.* at 429. The zoning hearing board determined that "Crown [Communications] was a non-corporate business entity operating for profit, that Crown [Communications] was not regulated by any government agency and that the property was located in a residential district." *Id.* at 429–30. The board concluded as a matter of law that the plaintiff Crown Communications was not a "public service" corporation and denied its application. *Id.* The issue addressed by the Supreme Court was "what test should be applied to determine whether a business entity is a public utility for zoning purposes where the zoning ordinance does not define the term." *Id.* at 430–31. The court, after considering the definition of public utility contained in the Pennsylvania Utility Code, the Pennsylvania Public Utility Realty Tax Act, and Black's Law Dictionary, concluded:

> [W]hen zoning ordinances fail to define the term "public utilities," the term shall be understood to mean any business activity regulated by a government agency in which the business is required by law

to: (1) serve all members of the public upon reasonable request; (2) charge just and reasonable rates subject to review by a regulatory body; (3) file tariffs specifying all of its charges; and (4) modify or discontinue its service only with the approval of the regulatory agencies.

705 A.2d at 431–32. Applying this test, the court concluded that Crown Communications, "a private, non-regulated business," was not a "public utility" for purposes of obtaining a variance under the zoning ordinance. *Id.*, 705 A.2d at 432.

The *Crown Communications* case consolidated two cases. The other case addressed by the court was *Bell Atlantic Mobile Systems v. Zoning Hearing Board of Township of O'Hara*, 550 Pa. 266, 705 A.2d 427 (1997). Bell Mobile applied for variances to construct a transmission platform on top of a water tower located in a residential neighborhood. 705 A.2d at 430. The Zoning Board denied Bell Mobile's application. *Id.* In its appeal to the Court of Common Pleas, Bell Atlantic argued that its variance request should have been granted under the ordinance as an "essential service" offered by a "public utility." *Id.* The zoning ordinance defined "essential services" as various services offered by public utilities or municipal or other governmental agencies. *Id.* The Pennsylvania Court of Common Pleas held that because Bell Mobile was not a public utility as defined in the Public Utility Code, it did not qualify for the variance. *Id.* The Supreme Court affirmed, holding that Bell Mobile was not a "public utility" and therefore the board did not err in denying its request for a variance. *Id.* at 432. *See also Omnipoint Communications v. City of Scranton*, 36 F.Supp.2d 222, 234 (M.D.Pa.1999) (PCS providers are not public utilities under *Crown Communica-*

---

ten decision issued by the Zoning Board in this case would be adequate in another context.

**7.** Section 7.03 of the ordinance states that public utility buildings and structures are "in-

tended to include telephone exchanges, electric stations and substations, and gas, water and sewage pumping stations and sewage treatment plants; utility lines are excluded."

*tions* ); *Pittsburgh Cellular Telephone Co. v. Board of Supervisors of Marshall Township,* 704 A.2d 192 (Pa.Cmwlth.1997) (court referred to the Pennsylvania Public Utility Code and the Pennsylvania Municipalities Planning Code in determining that cellular telephone facility was not a "public utility" under the ordinance).

■ Although at the public hearing in this case PA Cellular presented testimony that it was regulated by the FCC and would offer the public 9–1–1 services, there are no facts in the record that suggest that PA Cellular would serve all members of the public, file tariffs or discontinue service only with the approval of a regulatory agency, as required under *Crown Communications.* Furthermore, cellular communications facilities are specifically excluded from public utilities under the Pennsylvania Utility Code. 66 Pa.C.S.A. § 102.[8] Accordingly, defendants had a substantial basis in Pennsylvania law for finding that PA Cellular's proposed use did not qualify for a special use exception as a "public utility building or structure."

PA Cellular argues, however, that because § 10.09 of the Zoning Ordinance "provides an exemption from Ordinance requirements for entities regulated by the PUC," (Brief in Support of Plf's Summary Judgment Motion at 16), the phrase "public utility buildings and structures" used in § 6.02(a)(3) must be understood to encompass its proposed wireless communications facility. Otherwise, according to PA Cellular, there would be no need to articulate a special use exception for "public utility buildings and structures." This argument misunderstands the holding in *Crown Communications,* which does not limit "public utilities" to entities regulated by the Pennsylvania Public Utility Commission. PUC-regulated entities may be exempt from requirements of Buck Township's Ordinance by virtue of § 10.09. But the special use exception in § 6.02 is not

limited to PUC-regulated entities. Thus, an entity not regulated by the PUC may qualify for a special use exception if it is nonetheless a "public utility" as defined by state law.

*Crown Communications* requires that where, as here, a zoning ordinance provides exceptions for a "public utility" use without defining the term "public utility," the applicant must satisfy the four-part test quoted above. It is indisputable that PA Cellular does not meet that test. Accordingly, the Zoning Board was correct in holding that the PA Cellular's wireless communications facility did not constitute a "public utility" building or structure allowable in a Township R–1 district by special exception.

## B. Exclusionary Zoning

■ PA Cellular contends that "[i]f the Board's denial is deemed to be correct, the decision results in the Ordinance being exclusionary and in violation of state law as the Ordinance fails to provide for wireless communication facilities." (Brief in Support of Plaintiff's Summary Judgment Motion at 18.) This contention presents "a legal issue that is not subject to deferential judicial review." *APT Pittsburgh,* 196 F.3d at 475.

"Pennsylvania law presumes that zoning ordinances are 'valid and constitutional, [and] thus places a heavy burden on anyone challenging the ordinance to prove the contrary.' " *Id.* "This presumption of validity can be overcome only in those rare instances when the ordinance excludes an otherwise legitimate use." *APT Pittsburgh Ltd. Partnership v. Lower Yoder Township, Cambria County,* 111 F.Supp.2d 664, 678 (W.D.Pa.2000). Exclusionary ordinances may take one of two forms—*de jure* and *de facto. Id.* "A *de jure* exclusion is one that, 'on its face, totally bans a legitimate use.' " *Id.* "*De*

---

8. The section provides, in pertinent part, "the term [public utility] does not include any person or corporation, not otherwise a public utility, who or which furnishes mobile domestic cellular radio telecommunication service." 66 Pa.C.S.A. § 102.

*facto* exclusion exists 'where an ordinance permits a use on its face, but when applied acts to prohibit the use throughout the municipality.'" *APT Pittsburgh,* 196 F.3d at 475.

The Zoning Ordinance at issue in this case does not expressly prohibit communication towers in Buck Township.[9] Indeed, specifically "prohibited uses" are identified only in § 6.05 of the Ordinance, dealing with the industrial district.[10] Section 6.05 establishes a district for "industrial and related uses of such nature that they require isolation from other land uses...." Communication towers is not a prohibited use in the industrial district. The fact that communication towers are not specifically prohibited in the industrial district suggests that they are permitted in such a district. That is, under the well-established principle of statutory construction, "expressio unius est exclusio alterius," the ordinance's explicit expression of prohibited uses for the industrial district indicates an intention to permit those uses not classified as prohibited. *See Keeley v. Loomis Fargo & Co.,* 183 F.3d 257, 265–66 (3d

Cir.1999), *cert. denied,* 528 U.S. 1138, 120 S.Ct. 983, 145 L.Ed.2d 933 (2000). By a parity of reasoning, the fact that the Ordinance does not delineate prohibited uses in other zoning districts supports a conclusion that only the uses specifically allowed in those districts are permitted. The industrial district thus becomes a catch-all district that permits all uses except those that are specifically prohibited, while only the uses specifically mentioned in the sections dealing with other zoning districts are allowable, either as a matter of right or as a special use exception.[11] Because the ordinance does not, on its face, totally ban communication towers, and the Ordinance may be interpreted in such a manner as to allow for such use, it cannot be said to be *de jure* exclusionary. *See Lower Yoder Township,* 111 F.Supp.2d at 679 (although zoning ordinance did not specifically permit communication towers, provision in ordinance that allowed in a light industrial district "[b]roadcasting, radio, and television station[s] and any necessary and related facilities" precluded a finding of *de jure* exclusion).

9. Since the commencement of this action, Buck Township has amended its zoning ordinance to specifically provide for communication facilities and towers. The fact that the ordinance in existence at the time of the decision in this case did not expressly address communication facilities and towers, however, does not mean that such uses were excluded.

10. The specifically prohibited uses are churches, commercial retail activities, dwellings, mining and excavation, schools, hospitals and similar institutions, and hazardous waste facilities. None of these categories of prohibited uses could be construed to encompass communications towers. It should also be noted that § 6.05 allows as "accessory uses," "water towers" and "etc." Finally, the height limitation in the industrial zone excludes "chimneys, antennae, water towers, and other industrial structures which are not buildings." Plainly, a 180 foot tower could be viewed as an industrial structure which is not a building.

11. The Ordinance mentions "transmitting towers" in only one section— § 6.01 dealing with the conservation district. A use permitted by special exception in the conservation

district includes "public utility structures (transmitting towers and sewage treatment plants only)." *Id.* at § 6.01(a)(3). Transmitting towers are specifically exempted from the building height restrictions otherwise applicable in the conservation district. Defendants suggest that the Zoning Ordinance at issue in this case is not *de jure* exclusionary because transmitting towers are allowed as a special exception use in the conservation district. The special exception, however, applies to "public utility structures," with the parenthetical allowing for "transmitting towers ... only" modifying that permitted special exception use. Having taken the position that the phrase "public utility buildings and structures" requires that the applicant be a public utility, defendants cannot now contend that a non-public utility, such as PA Cellular, can utilize this special use exception applicable to the conservation district. It should be noted, however, that the amendments to the Township's zoning ordinance now permit by special exception a communications tower in the *conservation district,* which, as noted above, comprises approximately 90 percent of the land area of Buck Township.

PA Cellular has not presented evidence to show that Buck Township's ordinance results in a *de facto* exclusion of communications towers.[12] To rebut the presumption of constitutionality, PA Cellular was required to show that the ordinance "effectively excludes the construction of any communications towers throughout the Township." *APT Pittsburgh*, 196 F.3d at 476. Having failed to present evidence on this issue, PA Cellular is not entitled to relief on the ground that the Buck Township ordinance is *de facto* exclusionary. *Lower Yoder Township*, 111 F.Supp.2d at 679–80.

## C. Effect of Prohibiting Provision of Personal Wireless Services

█ PA Cellular contends that the denial of its application effectively prohibits "the provision of personal wireless services" in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). The United States Court of Appeals for the Third Circuit has recently held that a plaintiff, in order to prove a violation of section 322(c)(7)(B)(i)(II) of the Telecom Act, must demonstrate that preventing the erection of a tower results in a significant gap in service for remote users, and that the plaintiff's proposal is the least intrusive means of filling that gap. *Omnipoint Communications Enterprises, L.P. v. Newtown Twp.*, 219 F.3d 240, 244 (3d Cir.), *cert. denied*, —— U.S. ——, 121 S.Ct. 441, 148 L.Ed.2d 446 (2000); *APT Pittsburgh*, 196 F.3d at 480; *Ho–Ho–Kus*, 197 F.3d at 70. As the court explained:

> [I]t is unnecessary for a provider whose application has been denied to show an express ban or moratorium, a consistent pattern of denials, or evidence of express hostility to personal wireless services. On the other hand, it is necessary for the provider to show more than that it was denied an opportunity to fill a gap in its service system. In order to

show a violation of subsection 332(c)(7)(B)(i)(II) . . . an unsuccessful provider applicant must show two things. First, the provider must show that its facility will fill an existing significant gap in the ability of remote users to access the national telephone network. In this context, the relevant gap, if any, is a gap in the service available to remote users. Not all gaps in a particular provider's service will involve a gap in the service available to remote users. The provider's showing on this issue will thus have to include evidence that the area the new facility will serve is not already served by another provider.

> Second, the provider applicant must also show that the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve. This will require a showing that a good faith effort has been made to identify and evaluate less intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative systems designs, alternative tower designs, placement of antennae on existing structures, etc.

*APT Pittsburgh*, 196 F.3d at 480.

At the hearing held in October of 1999, PA Cellular presented evidence that there was a gap in coverage in Buck Township. A gap in one provider's coverage, however, is not sufficient to establish a violation of § 322(c)(7)(B)(i)(II). *Newtown*, 219 F.3d at 244 (reiterating that "the doctrine prohibiting gaps is designed to protect the users, not the carriers"). Nor is it enough to show that there are no wireless communications *facilities* in Buck Township. *Ho–Ho–Kus*, 197 F.3d at 71 (the Telecom Act "bars local regulation that prohibits or has the effect of prohibiting personal wireless *services*, not the facilities that provide those services") (emphasis in original).

---

**12.** PA Cellular did not cite any authority in support of its exclusionary zoning argument. Nor did it marshal any evidence. Instead, its argument rested on the unsound premise that

because the Ordinance did not expressly provide for wireless communication facilities, it was exclusionary.

The relevant question is whether there is a significant gap in services as to all wireless providers. Although there are no wireless communications facilities within Buck Township, there was no evidence offered at the hearing as to whether other providers also had gaps in service in the Buck Township area.

In *Newtown,* the wireless communication provider, as in this case, challenged an adverse zoning board decision on the ground that it effectively prohibited the provision of personal wireless services. As in this case, the zoning board in *Newtown* conducted its hearing before the Third Circuit's decisions in *APT Pittsburgh* and *Ho–Ho–Kus.* The Third Circuit found that, under those circumstances, it was understandable that the record had not been sufficiently developed. Declining the invitation to decide the matter on an inadequately developed record, the Third Circuit directed that the matter be remanded to the Zoning Board to reconsider the proposed facility in compliance with *APT Pittsburgh* and *Ho–Ho–Kus.*

I believe that *Newtown* counsels the appropriate approach here. The parties should be afforded the opportunity to develop an appropriate record before the Buck Township Zoning Hearing Board, which should then make findings of fact on the questions pertinent to the claim that a denial of a special use exception will have the effect of prohibiting the provision of wireless communication services. If, after supplementing the record as required, the Zoning Board approves PA Cellular's application, this matter will be at an end. If, however, the Zoning Board again rejects the proposed facility, its decision will be "subject to non-deferential review under the 'effectively prohibiting' standard." *Ho–Ho–Kus,* 197 F.3d at 76.

## CONCLUSION

The Zoning Board's decision that PA Cellular's proposed wireless communication tower did not qualify as a "public utility building or structure" is consistent with Pennsylvania law. Moreover, the re-

jection of PA Cellular's application is neither the product of nor results in exclusionary zoning. Whether a denial of a special use exception in this case, however, has the effect of prohibiting the provision of personal wireless services cannot be determined on the basis of the present record. Because the rules for ascertaining whether an adverse zoning decision has such a prohibited effect were established in this Circuit after the Zoning Board conducted its hearing in this case, the Third Circuit's decision in *Newtown* counsels that the matter be remanded to the Zoning Board to hear evidence and make factual findings and ultimate conclusions on this matter.

An appropriate Order is attached.

## ORDER

NOW, THIS 17th DAY OF JANUARY, 2001, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Summary Judgment (Dkt. Entry 9) is DENIED.

2. Defendants' Motion for Summary Judgment (Dkt. Entry 13) is GRANTED IN PART AND DENIED IN PART. Defendants are entitled to judgment in their favor on plaintiff's claims that it was entitled to a special use exception on the theory that its communication tower constituted a "public utility building or structure." Defendants are also entitled to summary judgment in their favor on plaintiff's claim that the decision in this case effected exclusionary zoning. As to the question of whether the zoning decision in this case has the effect of prohibiting the provision of wireless services, defendants' motion for summary judgment is DENIED.

3. This case is remanded to the Zoning Hearing Board of Buck Township for further proceedings consistent with the foregoing Memorandum.

4. The Clerk of Court is directed to mark this matter **CLOSED.**